Good morning, your honors. May it please the court. My name is Paula Xenis, and I, along with my co-counsel, Kenneth Ravenel, represented Peter Wan in the case before your honors. We're here today because when Mr. Wan was sentenced for his tax evasion offense, the district court categorically prohibited Mr. Wan from introducing any evidence about his actual civil IRS liability. Hadn't the judge heard all this evidence shortly before the sentencing hearing? Your honor, he really hadn't, because the way the posture of this case went is in November, and your honor can look to the November 17th order of the district court. The district court said unequivocally, I am not hearing any evidence or argument on this point for purposes of 3553A. Then there was some back and forth, because in that same order, the court specifically said, and if you want to raise it, Mr. Wan, you have to move to withdraw. So the court, and I quote, says, unless Mr. Wan chooses to move to withdraw from the plea, he may not argue the actual tax loss, which everyone knew to mean the IRS civil liability. With respect to the vehicle, the judge, in fact, heard the substance of that evidence, did he not? I believe he considered the affidavits, and there was certainly evidence before the court, but here's the critical. He actually said that Mr. Barsky's testimony was highly unpersuasive, didn't he, and said it was riddled with holes. I mean, he was quite strong in his assessment of that testimony. And we would submit, Your Honor, that the court made that comment at a hearing not the sentencing, at the motion to withdraw stage, and that comment according to this court's settled precedent should be given no weight when the court is determining the reasonableness of the sentence and the decision to categorically exclude the evidence in the first instance. And we know that from United States v. Thompson. Thompson, which is cited in the briefs, is very instructive on this point. That was a case in which this court was reviewing the reasonableness of an 18-month supervised release sentence where the court made no findings. And the government made the same argument in Thompson that they're making to you today. The government said, well... But the judge in this case was actively engaged in the sentencing, wasn't he? Your Honor, he was engaged in the sentencing, but that was a sentencing in which he said we categorically could not argue under 3553A any of the actual IRS liability. And this was even after Mr. Juan, in his plea agreement, was promised, in exchange for giving up those important fundamental constitutional rights, he was promised you may argue for a variant sentence under any 3553A factor. And that would include the seriousness of the offense, the nature and circumstances of the offense. And so he was promised at that time. The plea agreement also says, Your Honor... But wasn't there a stipulation of the amount of loss in the statement of facts? Only for guideline purposes. Only for where the beginning, the starting point, as Gall says, of the sentencing conversation would be. And Mr. Juan, throughout, maintained we stand by that for criminal purposes, for the guideline purposes. But as Your Honor knows, loss in the guidelines is a very elusive concept. It's complicated. And it can mean different things at different times. But in the final analysis, didn't your client get exactly what he bargained for? No. He bargained that he would have a right to appeal any sentence above the advisory guideline range, resulting from the adjusted base offense level of 19. And isn't that exactly where he was sentenced by the court? No, Your Honor. He got 30 months, which is at the low end of a level 19. But here's what the guideline, the plea agreement waiver says. It says you can appeal from any offense level above 19. And he started with an offense level 20. But the judge said he was going to sentence him at level 19 in conformity with the plea agreement and did so. And isn't it the sentence and not the guideline range that triggers the right of appeal? We would argue no, and we're in good company on this. We're in good company on this because even at the guilty plea, at the plea colloquy, the district court read it that way. The district court at Mr. Juan's guilty plea, when it's the point of no return, right? Mr. Juan is giving up those important constitutional rights based on what he is told his promises are. And the district court said at the colloquy, quote, I draw your attention to paragraph 11B, the appeal waiver. That means if I were to sentence you above level 19, then you could appeal. No elaboration, no discussion as the government wants to do today and say, well, that really means 30 to 37 months. The court advised him. Was he sentenced above 19? He was given above a level 19. That was the 20 that the sentence started with. We're also in good company, and I'm loathe to— But he got 30 months. He did, Your Honor, but— Isn't that the low end of a 19? But he started at a 20. They got to a 19 in a different way. They got to or at least 30 months. I wouldn't even say it's a 19 because he started at a 20. The other good company we're with, and I'm loathe ever to cite unpublished opinions, but I'm not citing it for the holding. I'm citing it for the fact that this court sought the same appeal waiver the same way, and that was in Leach. Let's give you that it's procedurally unreasonable. Okay. But at the end of the day, didn't it harm us? Absolutely not, Your Honor. Why not? Because the court made it clear. We're looking now when this court is reviewing for whether a procedurally unreasonable sentence is harmless. You look to the sentencing findings that were made at the sentencing hearing, and this is what the district court said. At JA 898 through 900, the court pointed to two things that informed him on the sentence that were material to him. One was a 10-year conviction that Mr. Juan had. The other was the millions and millions of dollars of income that were not reported to the IRS. And then he goes on and he says the stipulated tax liability is highly significant in this case. So putting it all together, I thought that the guideline range sentence was appropriate. So the procedural error here was not permitting Mr. Juan to argue the actual civil IRS liability. That cuts to the heart of whether the stipulated tax liability should be given as much weight as the court gave it here. So this is clearly not a case. It's the other way. The court highlighted for this court, this was really significant to me. So I'm going to not let Mr. Juan argue any 3553A factors with respect to the actual liability, even though the settled precedent is the procedure that's supposed to take place at sentencing is first we determine the guideline. And Mr. Juan said I stand by that level 22. I stand by the fact that we're going to start at four years. Then the court under Gall and this court's interpretation of Gall says you're supposed to let the defendant make every argument that he wishes to make. And, of course, that would require the factual predicate behind it. And then finally the court has to address those arguments. Here the court cut us off at the pass. We couldn't even argue it or bring the evidence at sentencing. And then the court said, and you know that area over here that I wouldn't let you argue 3553A matters? That's what I'm going to sentence you based on. When we take what the court actually said at sentencing and we combine it with this court's established precedent, which says, and I go back to Thompson because I do think it's instructive. When this court was determining was the sentence procedurally reasonable and asking what Judge Floyd just asked of me, is it harmless? The government said, well, you know where you could look since the district court didn't make any findings at the sentencing? Look to the district court's findings on release or detention. Same proceeding. Court said all these things about the defendant that seemed material to the sentence. And the court said, no, no, no. We're not going to look at some other proceeding to inform the sentence. In fact, the court said it didn't relate to the sentence. So we can't consider it on appeal. We have the same situation here. The one sentence that the government wraps itself in was said at a different proceeding on a different matter with different standards. And that can't inform the harmlessness test here. Because if it does, then let's think about what does that set up in the future? Does that mean that this court's going to be in the business of looking at what was said at a suppression hearing or a trial or at the detention hearing and say, well, that informed the sentence? When the court said what it said at the withdrawal motion, the sentence wasn't before him. The arguments hadn't even been made. And that's because the court three months before sentencing said, we're not permitted to make them. I was looking for a case in which this very thing happened. And the only two I could find that even come close are Kimbrough and Pepper. And Pepper was most recently decided by the Supreme Court. And the court couldn't have been clearer about what Congress has said. 3553A is not discretionary. It's a congressional mandate. Congress has said, judge, at sentencing, you must start with the guidelines, but then you have to consider all these 3553A factors. And what's noteworthy about Pepper is that Pepper also read 3553A in conjunction with 3661. 3553A is what has to be considered. And I don't mean to cut you off, but what if what the defendant wants to do at sentencing regarding 3553A constitutes a retraction of part of his plea agreement? You're saying no problem? Well, Your Honor, I think that's really what happened here. He wanted to retract part of his plea agreement. At least from my viewpoint, that's what's happened. I know you're not in a position to agree with that. But assuming that his action in attempting to present this evidence at sentencing was in part a retraction of the stipulation made in his plea agreement, then how do we then analyze the duty of the court to consider the 3553A factors? Doesn't that bear on the subject at all? I think it bears only insofar as this. The evidence has to be let in. The arguments need to be made. And that's when the court can determine whether a breach has occurred. We would vigorously disagree that a breach occurred in part because the district court never asked, what do you mean by this stipulated $2.4 million loss number? The guidelines for tax loss are very different than the guidelines, the rules. This defendant had the assistance of an accountant before he entered into his plea. Correct. Why does the district court then have to put on the green eye shade and start looking into whether this defendant knows what he was stipulating to? Because the plea agreement. As a matter of fact. Not that the defendant understands the law, but that he knows that he was stipulating to a fact under correct assumptions. Because that fact had a certain meaning and it was for criminal guideline purposes only. That's what the plea agreement says. It says that the $2.4 million tax loss was for the, and it's titled in the plea agreement, advisory and factual guideline stipulation. So it was read, and we have to read the plea agreement in favor of the defendant, right? Any ambiguities or inconsistencies must be read against the drafter. I might be wrong about this, but I think at age 854, the judge said with regard to the argument for a lower tax loss, quote, was disingenuous and motivated by his view that he could defeat the pawn shop charges, which the government did not pursue pursuant to the plea agreement. Again, Your Honor, that was at the motion to withdraw stage. And this is the topsy turvy world that we're living in because of the way in which the court did this. Because of the reversible procedural error. The court is citing from findings based on the motion to withdraw. Because the court never let the evidence in, those findings weren't made at the sentencing hearing. And we don't have any factual footprint like this in any of the cases. Because the cases that come before Your Honor, the court does what district courts do. They let in the evidence. They let the defense make the arguments. They control the courtroom, certainly, and say I'm not going to let you, you know, waste my time with cumulative evidence or put on four witnesses to say the same thing. But they let the evidence in. And then decide these important issues. How can a tax loss be X amount for guidelines purposes, but yet Y amount for 3553A purposes? A quick example is if you look at the guidelines themselves, it says take a certain percentage of the gross revenue. And that will be the tax loss unless a more accurate figure can be determined. So from the time you get in, I'm not saying the record doesn't really bear out how they came to the $2.4 million number. But I'm giving the court an example. So that's a way in which the guidelines for loss give you a rough cut. And they do that all the time. And the reason why we know this was going to happen in this case, Your Honors, is because the plea agreement itself has that separate provision in paragraph 14 that says, you know what? For restitution purposes, for civil IRS liability purposes, we're not using the 2.4 number. We're going to let the defendant execute a closing agreement. And whatever that number is will be the restitution number. And then the government, so it's not the same, right? Because if it were the same, then we wouldn't need paragraph 14. The tax loss for criminal purposes under the guidelines would be the same as the civil IRS liability. And if that were the case, Your Honors, the point would be well taken. But that doesn't necessarily prove the point because A doesn't equal B doesn't mean that A doesn't equal C. But it's the possibility of. It's that the plea agreement says to Mr. Juan, you're going to have this opportunity to figure out whether the tax liability is different than the criminal liability. And if it is, you'll be permitted to raise it. For the purpose of guidelines, it's a gross loss. And for the purpose of restitution, so to speak, it's a net loss, net of deductions. Is that correct? And exemptions and different calculus. Correct. But the calculus may be different. And if it's mitigating to Mr. Juan because the IRS is not going to be out as much money as the criminal guideline suggests, that's mitigation. Thank you. Thank you very much. I see Mr. Rahman. Thank you, Your Honor. May it please the Court. My name is Sujit Rahman. I'm the appellate chief for the District of Maryland, appearing on behalf of the United States. I would like to begin, Your Honors, with the very first point that the defendant raised in this case on appeal. The idea that the stipulation, the $2.4 million stipulation, was only for guidelines purposes. That is simply not true. If you look at page 50 of the joint appendix, this is the plea agreement. And it is in bold face. Okay? Last paragraph on that page. None of this income was reported to the IRS. That's the over $18 million in income. The total tax loss owed to the IRS is approximately $2.4 million. That is in bold print. And it is under the statement of facts. It is not under the guidelines calculation portion of the plea agreement. It is under the statement of facts. The stipulation there is, I owe the IRS at least $2.4 million. If you look at the next page, page 51 of the joint appendix. Still within the statement of facts. Not under the guidelines portion of the plea. After taking into account additional expenses in 2007 and 2008, and for the purposes of this plea agreement and sentencing, the total tax loss is approximately $2.4 million. This is not just a guideline stipulation. It is a factual admission that the amount owed to the IRS, the actual tax loss, is $2.4 million. And I should take a step back, your honors, and give the court some perspective of the broader litigation here. The appellant, I think, for his own purposes, is just focusing on the sentencing issue in this case. But I think it's very important to understand the broader context of what this case is all about. You're saying he was getting other benefits. There were substantial benefits, Judge Keenan. The case is pending, your honors, so I won't say too much about it. But I know your honor is on the panel in the Barilotto case, the pawn shop controversy out of Baltimore. Mr. Wan was an interested party in that case. It's a related matter. It's in the joint appendix in his pre-sentence report, I think page 918, explicitly linking him to that broader conspiracy. Government decided not to charge him in that case. And, of course, if it had charged him in that case, a $20 million-plus conspiracy, money laundering, interstate transportation of stolen property, his guidelines would have been fundamentally higher. Fundamentally. And so the benefit here was, Mr. Wan, if you plead guilty to a criminal tax offense of $2.4 million, we will not charge you in that broader 17-person conspiracy. That's the benefit to him in this case. He wasn't charged in that massive stolen goods conspiracy. And as a result, he pled guilty to tax offenses. Essentially, he gets that benefit. He pleads under oath, my loss is $2.4 million. And, by the way, Judge Keenan, as you observed earlier, he had a CPA before he pled guilty. The tax loss was disputed before he pled. Very experienced counsel, Bruce Marcus, highly regarded defense lawyer in Maryland. He had a CPA working with him. They said, look, the tax loss is less than $2.4. We disagree with the amount. And the government said, look, if you don't agree, let's go to trial. All right? And we'll charge you with everything else, and we'll let the jury resolve this. Mr. Wan made a strategic decision. The government is right. They had my records. They have my computer. I've got my CPA. Obviously, no one believes him. I'm going to stipulate to the $2.4 million figure. That's a benefit to him. And we've pointed out in our briefing why even $2.4 is a benefit. If it had been over $2.5, he would have had a fundamentally higher guideline calculation because that's where the cutoff is in the guidelines. So he had extraordinarily effective advocacy from Mr. Ravenel, who is here today, in negotiating that plea. There were substantial benefits that this defendant gained. But the game was, the understanding was he will pay $2.4 million in restitution. Now, fast forward. He strategically delays his sentencing. And that's not just me saying it, Your Honors. Judge Legg made a specific factual finding. Highly experienced district judge, over 20 years on the bench, very, very carefully analyzed this case. And he said specifically, this delay is strategic. It is disingenuous. The court is well aware of Judge Legg's findings here. Frankly, forcefully rejecting what the defendant was doing, finding it to be completely inappropriate, showing up, essentially strategically delaying his sentencing for over a year until all of the Farmgate, all of the Baltimore conspiracy case was over. He waited over a year. And then he moves to, and then he challenges the tax laws. Ten days before sentencing, he says, you know what? It's not $2.4 million. It's $40,000. And the reason he did that, Your Honors, is because that was the restitutionary amount. He only wants to pay $40,000 to the IRS. And this is his way of trying to essentially, Judge Keenan, as you mentioned before, self-servingly rewrite his plea. He's already gotten rid of all the ITSP money laundering charges. He wasn't charged in the Jerome Stahl case. He has waited until all of those cases are finished. And now he strategically tries to cut down his tax laws to just $40,000. And the government would not stand for that, and it will not stand for that. And so we opposed it. And we said we will not allow a defendant self-servingly to show up ten days before sentencing after he himself has strategically delayed that sentencing and say that the factual stipulation is wrong. Imagine, Your Honors, what sentencing proceedings would turn into if a defendant can self-servingly show up, retain all of the benefits of his plea agreement, and then show up in sentencing and say, you know what? It's not $10 million like I stipulated in my plea. It's $5,000. It's $10,000. Imagine how disruptive that would be for a district court's docket. Every sentencing proceeding would turn into a mini-trial over Mr. Barsky's analysis, which this court, the district court, found to be specifically riddled with holes and incompletions. So finding an error here of procedural reasonableness, a procedural error here would frankly be catastrophic for the sentencing regime. Every defendant, at least every defendant like Mr. Wan, who is blatantly guilty of tax offenses, has no incentive to go to trial, will put his hands up, plead guilty, and then with all that money that he saved by not paying the IRS, will hire CPAs and expensive lawyers who will come in and say, you know what, folks? The loss isn't $2.4 million. It's not $10 million. It's $50. And the sentencing proceeding is going to turn into a huge mess where essentially we're litigating issues that we thought we had resolved. That's the whole point of a plea agreement, the emphasis of finality, of speed, of resolving cases. And to find for the defendant in this case is a recipe for the exact opposite, to draw out litigation like this defendant did over a year between his guilty plea and his sentencing by his own actions. The incredible cost here, the government, there are, what, I think 900 pages in this joint appendix. All of that is after the guilty plea, right? All of that litigation is after the guilty plea when one presumes the litigation had been final when it was over. It is a tremendous burden on the government. It is a tremendous burden on the courts to have district courts having to deal with these kinds of last-minute issues that are disingenuous. Not my words. Judge Legg's specific factual finding in this case. It makes no difference. It's a law of the case, Judge Floyd. It makes no difference. And by the way, if it's not clear from the record, that motion to withdraw hearing was five minutes before the sentencing. Over five hours that day, Judge Legg heard a marathon argument, very patiently listened to both sides, weighed pros and cons, and forcefully rejected the motion to withdraw. He then took a five-minute recess. It's in the record. I think it's page 850. In fairness, though, the defense's point is that he didn't hear evidence on this. He had an affidavit presented to him as part of the motion, and so it was qualitatively different. Yes, Your Honor. I hear the point, although I would respectfully even disagree on that. You're saying it's a distinction without a difference? Correct. Certainly on the facts of this case. Here's why. When a defendant stipulates to a plea, and this is the legal issue, putting aside the facts of this particular case. When a defendant stipulates to a factual issue in his plea, there are benefits to him for doing that, and there are reasons to accord that stipulation finality. A defendant, if he disagrees with a particular statement, if he thinks that, you know what, I made a huge mistake here, his remedy is to move to withdraw. And there is a long line of precedent in this court and in the Supreme Court about how you have to actually withdraw from a guilty plea if you think you made a mistake. Rule 11 has procedures for that, United States against Moore, which is the long-settled precedent from this court. It's a six-factor test that a defendant has to qualify if he wants to withdraw. So there is finality when it comes to guilty pleas. That's a fundamental precept of the criminal justice system. There has to be finality. And so when a defendant says, I made a mistake, there are procedures for him to follow, and that procedure is not to self-servingly hold back on one aspect of the plea but derive all the benefits that he's otherwise gained. His remedy is to move to withdraw. And simply because he moves to withdraw doesn't mean he's awarded relief. Of course, he has to qualify under the six-part test, which Judge Legge, I thought, very carefully went through in this case. So – and on that score, one of the factors, Judge Keenan, to answer your question is a demonstration of actual innocence or credible innocence. That's where Judge Legge made his finding. In other words, Judge Legge would have released this defendant from his plea if indeed the $40,000 tax analysis was persuasive. Right? So Judge Legge did consider the tax loss analysis. Or if there was a serious question about what you're saying. Correct. That's right. That's right. He would have been obligated to – if he hadn't found that analysis to be so wholly unpersuasive, if he found that it was an equipoise, then would you agree that arguably he needed to grant the motion to withdraw or no? He would have had to have found it persuasive. Yes, that's right, Your Honor. There are six factors. What would be the standard at that point in time he would apply in making that determination? I know it's academic because – That's right. Your Honor, there is a six-part test, and I hate to just sort of focus on six-part tests, but the Moore analysis is, I think, your lodestar. If you can qualify under each of those factors, number one – No, no. I know those factors. I just didn't know if there was a concise standard that we had articulated other than that. It would be Moore. And, Your Honor, there is sort of a broader equitable principle here, and I should say the government has very little interest in – if indeed the tax loss here was $50, I don't think we would in good faith be standing here and saying, no, he is stuck to the $2.4 million figure. I could see the parties being able to work something out, coming back to the court and saying, you know what, the PSR is wrong. There are issues here with the tax loss. I could see that in sort of practical terms, but we vigorously contest the tax loss in this case for the reasons, again, you don't have to take my word for it. You can take Judge Legg's specific factual finding, which, of course, the defendant makes no reference to in his briefing. It's our obligation to bring it to the court's attention, but that's important because it's part of the broader story of this litigation. I think it's so important to think about what this withdrawal litigation, what this tax loss litigation represented within the broader sweep of this case. The real benefit here to this defendant was this criminal tax plea. That was a victory for him, not being charged with those other 16, 17 defendants. He then strategically delays his sentencing. Again, not my words. Judge Legg's specific finding of disingenuousness, of strategic behavior, the sort of thing that district court simply will not stand for. And the government had to vigorously respond, and we did. And we will certainly do our jobs when it comes time to do that. Is there anything further you'd like to add? Nothing, Your Honor. One last point, Judge Keenan. We haven't talked about the appellate waiver issue. I'm happy to address that if the court has any questions about it. The only point, Your Honor, I do think the substance here is important. And so certainly we could see an opinion where the court chooses not to really resolve the appellate waiver issue and gets to the substance. But if you look at, just focusing on the appellate waiver, if you look at the actual language here, the emphasis is on waiver from a sentencing range, right? That is essentially, let me just read the language. It's at page 52 of the joint appendix, paragraph 11B, relevant portion. The defendant reserves the right to appeal from any sentence above the advisory guidelines range resulting from an adjusted base offense level of 19. Well, couldn't you make an argument that that actually is ambiguous because he ended up putting it at 20 even though he was in the range of what 19 called for? So, I mean, we would have to resolve that ambiguity in favor of the defendant. You would if there was an ambiguity, Judge Floyd. But I don't think there's an ambiguity here. What about this language resulting from? Right. What does that mean? Well, it means resulting from the calculation of the level 19 and then the criminal history, which consistent with most U.S. attorney's offices, our office does not take a position on a defendant's criminal history at the time of his plea because anything could happen. There might be things we don't know about that turn up at sentencing. So the point is he's waiving the ability to appeal any sentence within a range. It's not tied to the calculation of the offense level. There's nothing about that in this plea agreement. It's you're waiving your right to appeal from a range, and that range in this case is what's linked to a level 19, which is 30 to 37 months. And I should also say, and again, I don't want to take up the court's time, but there's a reason why we ended up at a level 20 in this case. The government withheld the third point of acceptance because of the defendant's strategic behavior. I mean, that's not – there's no dispute about that. If all of this stuff hadn't happened between the year, between the guilty plea and the sentencing, we would have had a level 19. So defendants certainly shouldn't be rewarded for engaging in the kind of conduct that Mr. Wan engaged in here, or his representatives at least. What they did, again, Judge Legg's specific finding, was strategic. It was completely inappropriate, and the government, again, is simply not going to stand back and let that happen. We withheld the third point of acceptance because that's what we were entitled to do. But by doing that, certainly a defendant shouldn't gain the right to be in this court, right? If Mr. Wan had been sentenced to 30 months in prison, and if he had been at a level 19, in other words, if the government had moved for the third point of acceptance, he wouldn't have – he wouldn't be here today, right? He wouldn't have an appeal. By engaging in that strategic behavior, he essentially earned the right to take up this court's time. And all the briefing that took place in this case, we simply – the government simply cannot stand back and let that happen. So we would, again, in evaluating the appellate waiver in this case, Your Honors, we would respectfully submit to the court that you should think about the practical import of what a ruling for the defendant on the appellate waiver issue would hold. Defendants can then essentially withdraw from their guilty pleas, challenge the factual stipulations, come up with tax loss analysis that are riddled with holes and incompletions 10 days before sentencing, and somehow earn the right to be before this court. It's not a useful use of the government's resources. It's not a useful use of the district court's resources. It's certainly not a useful use of this court's resources. With that, Your Honors, I would submit if there are no further questions. Thank you. All right, sir. Thank you very much. Ms. Exinius? Is that closer? Thank you, Your Honor. I'd like to deal with the plea agreement, one, the huge mess, two, and the strategic delay, as the government calls it, three. Let me start with three first because it's the easiest. This delay was completely countenanced by the government, agreed to and endorsed, and most importantly— I don't know that that really helps us here. That's fine, Your Honor. Then I'll move on. With respect to the government likes to talk about the negotiations that happened before the plea was entered. That's so highly instructive, Your Honor, because the government was on notice when they drafted this agreement that the defense did have problems with the loss and out. And, in fact, the stipulated tax loss has the qualification in it for criminal guideline purposes because it's under factual and advisory guideline stipulation as part of the plea agreement. And it notes that this loss deals only with the expenses of 2007 and 2008. Yet Mr. Wan pled guilty to five years of tax offenses, right? So by the plea agreement's plain language, there are going to be potentially other expenses that would be part of the civil loss. And that's where paragraph 14 comes in, that Mr. Wan will figure out his civil IRS liability. And then the government, standing here today, saying, but we had all these negotiations, then drafts this agreement and allows Mr. Wan, in the agreement, to make 3553A arguments and bring up, as we see in paragraph 8, all evidence concerning background, character, and conduct of the defendant. So the government, as the drafter of the agreement, likes to talk about all the concessions it made. But how about all the benefits it got in exchange for the promises that it made? At the Rule 11 colloquy, I haven't heard you address that. Did that clear up any question? To some degree, it absolutely did. Because at the Rule 11... Okay, why was there remaining ambiguity, then? In with respect to which part, Your Honor? Do you mean with respect to the loss? Yes, uh-huh. Well, there wasn't, in our opinion, because at the Rule 11 colloquy, Mr. Ravenel made clear for the court that we would be raising... We're going to do a civil closing agreement with the IRS, and that number is going to be the restitution number. It came up in the context of the court asking, well, is the 2.4 million going to be the restitution number? And Mr. Ravenel said, no, it's not. And whatever the number is, we will raise it for the court. Ms. Raman, if I understood... I mean, not Mr. Raman. It's okay. If I understood Mr. Raman's argument... Yes. He wants us to take a position that he's not able to appeal from that plea. He's told me he agrees. So, why are you here? We're here because you are correct, Judge Floyd. At best, it is ambiguous. It is clear as mud. That clause, we would read in favor of the defendant because that's what the clearly established jurisprudence says we do in the context of a plea agreement. This is not just a mere contract. It's contract plus. It's when a defendant gives up those fundamental constitutional rights. So, when we're having a good faith debate as to what those words mean, it is by definition ambiguous. But I want to raise one other point, and it wasn't very artfully raised, so I apologize for that. But in every case that both sides cite, Blick, Bowe, this court most recently decided this in Lewis. When the government below is actually arguing, and the government did this, in contravention of the plea agreement, because remember the government, well before the... I'm not going to hear civil liability for 3553A purposes. The government agreed with that. So, we would argue it's the government that breached this agreement. The government did not stand behind its promises in this agreement, and they can't then have the benefit of keeping us to the appeal waiver. That's what Blick says. That's what Bowe says. That's an independent reason that this court should look very carefully at this appeal waiver. Because if the government did not honor its end of the bargain, which it did not, because Mr. Wan gave up his right to go to trial. You know, the government wants to make very little of that. But what Mr. Wan saved them was a lengthy trial. It's the government's characterization that they would have won. Perhaps they would have. That's why Mr. Wan made a good decision for himself. But he saved them a lengthy trial. It saved them a guideline dispute. And what this is really about is if the district court just would let the evidence in. The huge mess that Mr. Roman is talking about is what happened because the court in November, three months before sentencing, said, I'm not going to let it in. And that is so unprecedented that at sentencing, a defendant on 3553A with a congressional mandate is, the court must consider this evidence. It was unprecedented to hear that we couldn't. So that's where the mess ensued. We wasted a lot of trees and a lot of hours talking about whether we should let the evidence in instead of just at sentencing, let the evidence in, and call the balls and the strikes. Say, we're not going to hear any more from those witnesses. I've heard enough. Not I'm not going to hear it at all, but I've heard enough. And then make the 3553A determination. Had the court done that, we might not be here today. We certainly would not have been here. Thank you. Thank you so much for your time. The court will take a brief recess. Before doing so, though, we'll come down to Greek Council. This court will take a brief recess.
judges: Barbara Milano Keenan, Henry F. Floyd, Henry E. Hudson